UNITED STATES of America,
Plaintiff,

v.

**Richard Allen HUMPHREYS, a/k/a Israel Humphreys, a/k/a Prophet Israel Humphreys, Defendant.**

No. CR 01–40016.

United States District Court,
D. South Dakota,
Southern Division.

July 5, 2001.

Robert A. Mandel, U.S. Attorney's Office, Sioux Falls, SD, for Plaintiff.

William A. Delaney, III, Federal Public Defender's Office, Sioux Falls, SD, for Defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

On May 18, 2001, Defendant, Richard Allen Humphreys, was found incompetent to stand trial and was committed to the custody of the Attorney General. Defendant was moved to the Federal Medical Center in Rochester, MN (FMC Rochester) on May 31, 2001. Defendant has refused to receive psychotropic medications on a voluntary basis. Defendant's treating psychiatrist proposed involuntary treatment with antipsychotic and mood stabilizing medications, along with anti-depressants as needed. On June 6, 2001, in anticipation of an administrative hearing on involuntary treatment, Defendant moved for an Expedited Hearing Concerning Administration of Psychotropic Medications. The Government opposes the motion. A hearing on this matter was held on June 28, 2001.

## BACKGROUND

■ The Bureau of Prisons (BOP) may forcibly medicate an inmate after holding an administrative hearing. The procedures for this hearing are outlined in 28 C.F.R. § 549.43. In summary, section 549.43 requires the following:

1. that the inmate be given 24 hours advance written notice of the date, time, place and purpose of the hearing;

2. that the inmate be told he has the right to appear at the hearing, to present evidence, to have a staff representative and to request witnesses;

3. that the hearing be conducted by a psychiatrist "who is not currently involved in the diagnosis or treatment of

the inmate"; [1]

4. that the treating psychiatrist must be present and "present clinical data and background information relative to the need for medication";

5. that "[t]he psychiatrist conducting the hearing shall determine whether ... psychotropic medication is necessary in order to attempt to make the inmate competent for trial or is necessary because the inmate is dangerous to self or others, is gravely disabled, or is unable to function in the open population of a mental health referral center or a regular prison." The psychiatrist must prepare a written report of his findings;

6. that the inmate be given a copy of the psychiatrist's report and given the chance to appeal the decision within 24 hours. The administrator must decide the appeal within 24 hours after the appeal is made;

7. that, if the inmate appeals, no medication will be administered until after the appeal is decided, absent an emergency;

8. that a psychiatrist other than the attending psychiatrist will provide follow-up monitoring of the medication and such follow-ups shall be documented.

In his motion, Defendant requests many things, namely:

- that Defendant's counsel be given reasonable notice of Defendant's refusal to submit to voluntary medication prior to the initiation of proceedings under 28 C.F.R. § 549.43

- that Defendant's counsel be given fourteen days notice before the hearing

- that Defendant be allowed to be represented by counsel at the hearing, and if not, that Defendant's counsel be informed of the name and phone number of the lay advocate appointed for Defendant

- that the administrative hearing be electronically recorded or recorded by a court reporter

- that the Court and Defendant's counsel be immediately notified of all determinations made within the administrative process and be provided with copies of the written report

- that the Court and Defendant's counsel be provided with copies of any decisions of the institution's mental health division administrator should an administrative appeal be taken by Defendant

- that psychotropic medication not be administered to Defendant against his will without the prior approval of this Court pursuant to a written Order

- that this Court conduct a hearing to determine the impact of forced medication on Defendant's constitutional rights

- that this Court immediately issue an Order prohibiting the BOP from forcibly administering psychotropic medications to Defendant until after a hearing on this motion

Defendant's motion was a day late. On June 5, 2001, after Defendant's refusal to voluntarily take medication, and pursuant to 28 C.F.R. § 549.43, an administrative hearing was being held at FMC Rochester to determine if Defendant could be involuntarily treated with psychotropic medication. It appears from the record that Defendant received notice of the hearing

1. The psychiatrist presiding over the administrative hearing will be referred to as the "hearing examiner."

24 hours in advance, on June 4, 2001, and was informed of his right be present at the hearing, to present evidence, to be represented by a staff member, and to call witnesses. Defendant requested that two correctional officers represent him at the hearing. Defendant was instead assigned a registered nurse, Pam Hollarah, as his lay advocate.[2] At the hearing, Ms. Hollarah testified that she believed Defendant had a mental illness. The hearing was conducted by an independent psychiatrist, Dr. Ubaldo Bocanegra, who was not involved in the diagnosis or treatment of Defendant. Dr. Bocanegra drafted a written report finding that psychotropic medication was necessary because Defendant is a danger to himself or others, gravely disabled, unable to function in the open population and because medication is necessary to treat Defendant's mental illness and to make Defendant competent for trial.[3]

On June 5, 2001, Defendant appealed Dr. Bocanegra's decision to Dr. Ruth Westrick, Associate Warden, Mental Health. Dr. Westrick denied Defendant's appeal the next day, June 6, 2001.

According to the Declaration of Dr. Daniel Shine, Defendant's treating psychiatrist, on June 7, 2001, Defendant complied with the involuntary treatment and allowed himself to be injected with the medications prescribed. Initially, Defendant agreed to accept the medication on the condition that it be noted in his medical record that he was doing so against his will and that because of his spiritual beliefs he did not believe in violence. At some point shortly after receiving the first round of medication, however, Defendant began to "adamantly, verbally resist medication." Dr. Shine became concerned that force would then be necessary to medicate Defendant and decided to forego further treatment until this matter was resolved by the Court.

A. *Defendant's Request for Added Procedures*

■ Defendant requests several procedures that are not called for in section 549.43. Specifically, Defendant requests that the Court order the BOP to give Defendant's counsel: (1) notice of Defendant's refusal to accept medication; (2) fourteen days notice prior to the administrative hearing; (3) the right to represent Defendant at the hearing; (4) information regarding Defendant's lay advocate; (5) the right to have the hearing recorded; (6) immediate notification of any determination; and (7) copies of all decisions made. In addition, Defendant filed a "supplemental submission" to his motion the evening before the hearing, which makes other general claims that the provisions under 28 C.F.R. § 549.43 violate his due process rights.

In *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), the Supreme Court examined a provision from Washington State which is nearly identical to 28 C.F.R. § 549.43. *Harper* involved the forced medication of a convicted prisoner by Washington State. The Supreme Court found that inmates have a liberty interest "in avoiding the unwanted administration of antipsychotic drugs." *Harper*, 494 U.S. at 221–22, 110 S.Ct. at 1036. Policies that infringe on that constitutional

---

**2.** 28 C.F.R. § 549.43(a)(2) provides that if the inmate "requests a staff representative with insufficient experience or education, the institution mental health division administrator shall appoint a staff representative."

**3.** These reasons were all checked off in the "Findings" section of the Involuntary Medication Report. Specific findings of each of these grounds is not as clear in Dr. Bocanegra's written report.

right must be " 'reasonably related to legitimate penological interests,' " such as "combating the danger posed by a person to both himself and others." *Id.* at 223–25, 110 S.Ct. at 1037–38 (internal citation omitted). The Supreme Court found that the state policy requiring an administrative hearing comported with substantive due process because an inmate could not be medicated against his will without a finding that the inmate was "dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227, 110 S.Ct. at 1039–40. Further, the Court found that the administrative hearing procedures provided under the state policy comported with procedural due process. *Id.* at 228, 110 S.Ct. at 1040. Since 28 C.F.R. § 549.43 is essentially identical to the policy analyzed in *Harper*, the Court finds that the provisions of section 549.43 comport with due process. *See United States v. Morgan*, 193 F.3d 252 (4th Cir. 1999); *United States v. McAllister*, 969 F.Supp. 1200, 1207–08 (D.Minn.1997).

At least one of those procedures, however, was not properly followed. From what can be determined from this limited record, it appears Defendant's lay advocate, Ms. Hollarah, did not meet the requirements of due process. There is no indication from the record that Ms. Hollarah presented any evidence on behalf of Defendant or that she presented his reasons for objecting to the medication. Instead, the record does show that Ms. Hollarah testified against Defendant, stating that she believed he had a mental illness. At the hearing on this matter, Defendant's counsel also stated that Ms. Hollarah had filed a disciplinary report against Defendant shortly after he arrived at FMC Rochester. Faced with a similar situation, a district court in the District of Columbia remanded the matter for a second administrative hearing that complied with due process. *United States v. Weston*, 55

F.Supp.2d 23, 25–27 (D.D.C.1999). The same will be done here. The finding of the hearing examiner, Dr. Bocanegra, and the affirmation of that finding by Dr. Westrick on appeal, will be reversed. If Defendant is to be involuntarily medicated, another hearing will have to be held. At any subsequent hearing, a lay advocate will be appointed that will more fully comply with the due process requirements of section 549.43. In addition, the lay advocate should be provided with an adequate opportunity to communicate with Defendant's attorney, Mr. William Delaney, before the next section 549.43 hearing. Defendant does not have a constitutional right, however, to have Mr. Delaney represent him at that hearing.

## B. *Review of Administrative Hearing*

■ Defendant asks that psychotropic medications not be administered to him against his will until FMC Rochester receives approval from this Court. Judicial approval is not required under the terms of 28 C.F.R. § 549.43. In fact, section 549.43 is silent as to judicial review of the administrative determination to treat an inmate involuntarily. Several courts have found, however, that judicial review is available. *See United States v. Weston*, 206 F.3d 9, 12–13 (D.C.Cir.2000) (the court did not decide on any substantive or procedural standards of review); *Morgan*, 193 F.3d at 262–264; *United States v. Keeven*, 115 F.Supp.2d 1132, 1137 (E.D.Mo.2000); *McAllister*, 969 F.Supp. at 1212 (finding that judicial review is available under the Administrative Procedure Act).

The courts in both *Morgan* and *Keeven* reviewed the findings of the hearing examiner for arbitrariness. *Morgan*, 193 F.3d at 262; *Keeven*, 115 F.Supp.2d at 1137–38. This standard of review is also found in the

Administrative Procedure Act (APA).[4] *See* 5 U.S.C. §§ 701, 706. The "arbitrary and capricious" standard under the APA requires an agency to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983).

The record from the administrative hearing is scant and does not satisfactorily provide an explanation for the hearing examiner's findings. Dr. Bocanegra did properly file a written report but on the whole it contains Dr. Bocanegra's conclusions with little explanation. The only evidence presented in Dr. Bocanegra's report consists of a summary of his impressions of Defendant and Defendant's own perception of himself. None of this evidence provides much support for the findings in the Involuntary Medication Report that Defendant is dangerous, gravely disabled or unable to function in the open population. The report gives a bare bones synopsis of who attended the hearing[5] and makes absolutely no mention of the evidence that was presented at the hearing.

The record does contain a "Witnesses Summary of Testimony" that consists of a one sentence synopsis of the testimony of each witness, with one exception.[6] The only remaining documentary evidence is the Involuntary Medication Report. This is merely a form that provides some basic factual information about the administra-

tive hearing and the final conclusions reached by the psychiatrist presiding over the hearing. It does require the hearing examiner to state what documentary evidence he relied on but it does not provide any insight into the substance of that evidence or any other evidence presented at the hearing. Given the state of the record, it is difficult to even begin to examine the arbitrariness of the decision for forcibly medicate Defendant.

A more complete record of any subsequent section 549.43 hearing will be required. In addition, it appears that Defendant has a lengthy treatment record. As much of that record as might reasonably be gathered should be gathered even if the treating psychiatrists do not believe it would be helpful. Such information may be helpful to the Court in determining Defendant's claim that his religion prevents him from being medicated. At this time, however, Defendant's bare assertion that his religion prevents him from being medicated is not enough, without other support, to prevent involuntary medication if the record from any subsequent hearing supports involuntary treatment. The Court reserves the right to have its own court appointed expert for any subsequent proceedings that may be necessary in this case.

## C. *Defendant's Sixth Amendment Claims*

Defendant also requests a determination of the effect these psychotropic medications would have on his Sixth Amend-

---

**4.** The *McAllister* court found that an inmate exhausts his administrative remedies by appealing the psychiatrist's decision within 24 hours as provided in section 549.43. *McAllister*, 969 F.Supp. at 1214. There is no dispute Defendant filed an appeal in this case.

**5.** In his report, Dr. Bocanegra states that Pam Aaberg was the patient representative. The

other documentary evidence and representations from counsel at the hearing, however, indicate that Pam Hollarah was the lay advocate assigned to Defendant.

**6.** The testimony of one of Defendant's fellow inmates was summarized in four sentences.

ment rights. This determination can be left for a later date and no hearing will be held on this issue at this time.

Defendant relies on *United States v. Brandon*, 158 F.3d 947 (6th Cir.1998) and *United States v. Weston*, 206 F.3d 9 (D.C.Cir.2000). In *Brandon*, the Sixth Circuit examined this issue in a different context. The pretrial detainee in *Brandon* was not found to be dangerous and was being medicated *solely* for the purpose of making him competent to stand trial. *Brandon*, 158 F.3d at 954. While recognizing the government's interest in bringing a defendant to trial, the *Brandon* court held that a judicial determination of whether forced medication would effect the defendant's constitutional right to fair trial was required. *Id.* at 955–56.

In *Weston*, after having remanded the case to the BOP for a section 549.43 hearing, the district court upheld the Bureau of Prisons' decision to forcibly medicate the defendant, a pre-trial detainee. *Weston*, 206 F.3d at 12. The District of Columbia Circuit Court, however, found that there was not enough evidence in the record to support a finding that the defendant was dangerous. *Id.* at 13. In addition, it held that the government's theory that medication was necessary to make the defendant competent for trial and the defendant's contention that forced medication would violate his Sixth Amendment right to a fair trial were ripe for review. *Id.* at 13–14.

At this time, the Court will not determine whether Defendant's Sixth Amendment claims are ripe for review. As it stands, it is not clear that the BOP's sole justification for medicating Defendant is to make Defendant competent to stand trial. Indeed, Dr. Bocanegra found that many grounds existed for medicating Defendant. As noted above, the current state of the record makes judicial review of these de-

terminations difficult. Further, as noted, there were procedural deficiencies in the initial section 549.43 hearing. In this case, it is best to remand the matter to the Warden of FMC Rochester for action consistent with this opinion. This issue may be considered in the future if Defendant seeks judicial review of any subsequent decisions by the BOP to involuntarily medicate him. Accordingly,

IT IS ORDERED:

1. that Defendant's Motion for Expedited Hearing Concerning Administration of Psychotropic Medications (Doc. 40) is GRANTED in part and DENIED in part;

2. that this matter is remanded to the Bureau of Prisons, specifically the Warden at FMC Rochester, for further proceedings consistent with this Order;

3. that Defendant is not to be involuntarily medicated until the BOP receives approval from this Court; and

4. that the Court will schedule further proceedings in the case, on either party's motion, as appropriate.